**Cyndee GRIGSBY and Robert R. Wightman, Relators,**

v.

**The Honorable B.F. COKER, Judge, Respondent.**

No. 95–0057.

Supreme Court of Texas.

May 11, 1995.

Rehearing Overruled Sept. 14, 1995.

Robert R. Wightman, Dallas, for relators.

R. Clayton Hutchins, Grand Prairie, Christopher Johnsen, Austin, for respondent.

PER CURIAM.

In a child custody modification proceeding the trial court has enjoined the father and mother "from communicating with any person about the other party in a derogatory manner either in person or by and through their attorneys using such terms as pedophile or other derogatory or defamatory words except when discussing the case with the counsellors or experts." The mother and her attorney petition this Court for mandamus directing the trial court to vacate this "gag order", arguing that it violates their state and federal constitutional rights of free speech, and that it was issued without the notice and hearing required by due process. We conditionally grant relief.

Ever since Cyndee Grigsby and William Cox were awarded joint managing conservatorship of their three children in their divorce, their disputes over visitation and possession of the children have been marked by intense acrimony. After complaining unsuccessfully to Child Protective Services that William had sexually abused one of the children, Cyndee moved for a modification in custody and visitation. At a hearing on temporary orders the following colloquy occurred:

> [William's attorney]: There is one other request that we have of the Court ... and that is that both [Cyndee's attorney] and his client continue to refer to [William] as a pedophile, and they have told neighbors and witnesses, and they have promised to send documents to persons not parties to this lawsuit, nor experts in this lawsuit, predicting [that William] is a child molester and a pedophile and we would ask—

> [Cyndee's attorney]: Your Honor, there is no motion for that and we have no witness to verify it, and I really want to be able to defend myself because it's totally—

> [William's attorney]: We would ask the Court just to do simply a mutual injunction, as to both parties, not to characterize the other party to persons who are not experts in the case, or not parties, in any derogatory or defamatory manner, and that should be able to be accomplished without an injunction.

> [Cyndee's attorney]: I have a need to investigate for my client. We're alleging pedophilia and there are other young ladies in the neighborhood ... who may have been victims. What they are asking is that I not be allowed to investigate.

> THE COURT: No, they're not. They're asking—you can ask questions without characterizing or making allegations. The request for the mutual injunction is granted.

In its temporary custody and visitation order signed seven weeks later the trial court included the "gag order" we quoted at the beginning.

Not long afterward William moved to have Cyndee's attorney held in contempt for violating the gag order, and Cyndee moved to have the order vacated. At a hearing on the motions William's attorney argued that documents characterizing William as a pedophile and the child as a victim of incest and abuse had been distributed in the neighborhood where the children live, and that Cyndee's attorney had defamed everyone involved in the case. The guardian ad litem characterized Cyndee's attorney's behavior as outrageous and damaging to the children. William's attorney argued that the gag order was not an unconstitutional prior restraint because it was issued in a family case, and the guardian ad litem argued that even if it was unenforceable it should not be vacated. No one offered any evidence. The trial court refused to vacate the injunction by order issued December 29, 1994.

██ Gag orders in civil judicial proceedings are valid only when an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and the judicial action represents the least restrictive means to prevent that harm. *Davenport v. Garcia*, 834 S.W.2d 4, 9 (Tex.1992). Such order must be supported by evidence and specific findings. The trial court in this case made no attempt to comply with the requirements of *Davenport*, either before or after the order issued. The order is overly broad. It prohibits William and Cyndee, and perhaps their attorneys (although the order is not clear), from "communicating with any person about the other

party in a derogatory manner". As the parties have little to say about one another that is not derogatory, the order essentially prohibits them from speaking about one another at all.

■ William argues that a court has broader power to issue gag orders in family cases, and that procedural protections of notice and an evidentiary hearing can be dispensed with when gag orders are included in temporary orders adopted under section 11.11 of Texas Family Code. Section 11.11 states in part:

(a) In a suit affecting the parent-child relationship, the court may make any temporary order ... for the safety and welfare of the child, including but not limited to an order: ...

(3) restraining any party from molesting or disturbing the peace of the child or another party....

(b) Except [in circumstances not applicable here], temporary restraining orders and temporary injunctions under this section shall be granted without the necessity of an affidavit or verified pleading stating specific facts showing that immediate and irreparable injury, loss, or damage will result before notice can be served and a hearing can be held.... A temporary restraining order granted under this section need not:

(1) define the injury or state why it is irreparable; or

(2) state why the order was granted without notice.

While section 11.11 does give trial courts broad powers in family cases, it does not authorize them to invade constitutional guarantees. The trial court here could have adopted an order which complied with *Davenport,* but it failed to do so. This was a clear abuse of discretion.

■ The faults in this gag order are likely a function of the procedure, or lack of procedure, used in adopting it: no formal motion, no prior notice, and no formal hearing or evidence. There is no indication that exigent circumstances warranted an abbreviation in procedures authorized by section 11.11, when seven weeks passed between the date the

trial court stated it would issue a gag order and the date the order was signed.

As in *Davenport,* we conclude that relators have no adequate remedy by appeal, and that relief is therefore appropriate. *See also Kennedy v. Eden,* 837 S.W.2d 98 (Tex.1992).

The respondent named by relators in this proceeding is the active judge of the trial court, who recused himself before any of the proceedings with which we are concerned occurred. The assigned judge who issued the gag order also recused himself shortly thereafter. Relators have named the subsequent assigned judge who refused to vacate the gag order as a respondent in a related mandamus proceeding. The relief we grant today is directed to the last judge to rule on the gag order.

Accordingly, a majority of the court grants relators' motion for leave to file, and without hearing oral argument, conditionally grants a writ of mandamus directing the trial court to withdraw its order of December 29, 1994, and to issue an order vacating paragraph 9 of the order of September 22, 1994. TEX.R.APP.P. 122. The writ will issue only if the trial court fails promptly to comply.